IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ANGELA CLEARY                                                                          PLAINTIFF

v.                              Civil No. 05-5086

JO ANNE B. BARNHART, Commissioner,
Social Security Administration                                                        DEFENDANT

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, Angela Cleary, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits (DIB) under the provisions of Title II and supplemental security income benefits (SSI) under Title XVI of the Social Security Act. The court has before it the appeal briefs submitted by the parties (Doc. 4 & Doc. 5) and the transcript of the social security proceedings.

**Procedural Background:**

Cleary protectively filed her applications for DIB and SSI on August 8, 2003. (Tr. 9, 44-46, 140-142, 143, 145). She alleged a disability onset date of December 29, 2002, due to post-traumatic arthritis and residual injuries to her right ankle and knee. (Tr. 10, 54).

Cleary's applications were denied initially and on reconsideration. (Tr. 22-23, 24-25). She requested a hearing before an Administrative Law Judge (ALJ). (Tr. 33). A hearing was held on October 19, 2004. (Tr. 148-189). Cleary appeared and testified. (Tr. 150-177, 185-

187). She was represented by counsel. (Tr. 150). Paul Westberg, a vocational expert, also testified. (Tr. 173-185, 187-188).

By written decision dated December 8, 2004, the ALJ found that although Cleary had a severe impairment, post-traumatic arthritis of the right knee and ankle, the impairment did not meet or equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 11). The ALJ the concluded Cleary had the residual functional capacity (RFC) to perform a full range of sedentary exertional level activities. (Tr. 14). As this RFC precluded her return to her past relevant work as a licensed practical nurse and a certified nursing assistant, the ALJ utilized the testimony of the vocational expert to determine whether there were other jobs existing in significant numbers in the national economy that Cleary could perform, consistent with her RFC, age, education, and work experience. (Tr. 14). The ALJ concluded there were such jobs including work as a cashier and as an assembler. (Tr. 15-16). The ALJ therefore found Cleary not disabled within the meaning of the Social Security Act. (Tr. 16).

On December 13, 2004, Cleary requested a review on the record. (Tr. 5). The decision of the ALJ became the final decision of the Commissioner when the Appeals Council denied Cleary's request for review. (Tr. 2-4).

**Evidence Presented:**

On August 6, 2003, Cleary completed a disability report. (Tr. 53-62). On the report when asked to state why she had stopped working, she wrote: "My ankle and knee were bothering me very much. I also have a disabled child and needed to stay home to care for her. She has CP [cerebral palsy] and her and my injuries were on the same day from MVA." (Tr. 54).

On September 2, 2003, Cleary completed a supplemental interview outline. (Tr. 72-76).

She indicated she could bathe, dress, shave, and take care of her own hair care needs. (Tr. 72). She stated she could do laundry, dishes, change sheets, iron, vacuum/sweep, take out the trash, and wash the car. (Tr. 72). She indicated she could not rake leaves, do garden work, and was unable to walk long distances or kneel down without causing herself a lot of pain. (Tr. 72). She indicated she could go shopping for groceries or clothes, do the banking and go to the post office. (Tr. 72).

Cleary indicated she prepared meals three or four times a week including making sandwiches, frozen dinners, meats, vegetables, and dishes that required a recipe. (Tr. 73). She stated it took her longer to prepare meals (about an hour) since her disability began. (Tr. 73).

She can pay bills, use a check book, and count change. (Tr. 73). She can drive including unfamiliar routes. (Tr. 73). She stated she is unable to walk for exercise or errands and is unable to run. (Tr. 73). With respect to walking, she stated "walking a very long distance causes me pain. I am unable to kneel or crouch down because my foot on [right] does not meet the floor & my [right] knee is too weak." (Tr. 73).

She does not use any assistive devices. (Tr. 73). She stated she spent her time attending church, watching television, listening to the radio, reading and visiting with friends/and relatives. (Tr. 73). She also indicated she took care of her disabled four year old daughter. (Tr. 73). Because of this, Cleary indicated she did not have much time to do recreational activities. (Tr. 73). She indicated she had been forced to quit or been fired from two jobs because of her disability. (Tr. 73). Her disability interfered with her work because she fell at work once after her injuries and "a lot of times I would be limping because of all the walking we had to do and

everyone was always asking what happened to me although the injury was three years old it was getting progressively worse because of no joint space and arthritis." (Tr. 73).

She indicated she suffered from unusual fatigue and had to rest once a day for thirty minutes when her daughter was napping. (Tr. 74). She stated if she walks or is on her feet a lot she has pain in her right ankle and knee. (Tr. 74). If she sits still or when she gets up in the morning, Cleary also indicated she is very stiff and has a severe limp. (Tr. 74).

She stated the pain interferes with her sleep and is located in her right ankle and right knee. (Tr. 74). She indicated she is unable to put her right foot flat against the floor. (Tr. 74). She stated her pain usually lasted all day. (Tr. 74). When asked what activities caused the pain or symptoms, Cleary responded that her ankle does not flex or extend "but about 2 degrees in either direction, if I bump it or go up or down steps wrong it causes me pain." (Tr. 74).

She stated she could stand or walk for two or three hours before the pain occurs. (Tr. 74). When she sits she indicated the pain started as soon as she stands up because she gets stiff when sitting. (Tr. 74). Walking and standing make her symptoms worse. (Tr. 74). Cleary also indicated she had to wear flat shoes. (Tr. 74).

Cleary indicated she takes Ibuprofen, 800 mg., twice a day. (Tr. 74). Thus far, nothing helped with the pain other than medication. (Tr. 74). Cleary stated she had been told by her doctor that she has no joint space in her right ankle and scar tissue in her right knee. (Tr. 76). She stated she has been told both would require surgery either joint replacement or a bone fusion. (Tr. 76). She stated when she goes up stairs she must take one stair at a time using her good ankle and then up with the other foot. (Tr. 76). When she goes down stairs, she stated she goes down with the bad ankle first and then down with the good ankle. (Tr. 76).

A reconsideration disability report contains the following notations: "Severe depression. Panic attacks. Won't go out in public. Emotionally devastated. Always in pain, always tired." (Tr. 77).

The records indicate Cleary was involved in a motor vehicle accident on August 4, 1999. (Tr. 102). She was transported to Washington Regional Medical Center. (Tr. 102). She was thirty-eight weeks pregnant at the time and sustained injury to the lower abdomen causing a traumatic placenta abruptio with fetal distress. (Tr. 103-104, 110-111). Cleary underwent an emergency cesarean section. (Tr. 102).

Cleary was noted to have a left midshaft clavicular fracture, an open comminuted by nondisplaced fracture, right patella, bimalleolar fracture, right ankle with disruption of the syndesmosis, and a laceration over the medial aspect of the left knee. (Tr. 115). Cleary underwent an open reduction with internal fixation of the bimalleolar fracture of the right ankle with syndemosis screws. (Tr. 106). Her right knee laceration was also debrided and repaired and her left knee laceration repaired with sutures. (Tr. 108).

On November 13, 2002, Dr. B. Raye Mitchell noted that x-rays showed Cleary had post-traumatic arthritis of the ankle. (Tr. 120). On physical examination, he stated she extended to neutral and plantar flexes about 15 degrees. (Tr. 120). Dr. Mitchell noted this was the only motion Cleary had and that she had very little subtalar motion. (Tr. 120). He stated that her hardware was prominent medially but that the hardware wasn't what was hurting her but walking was. (Tr. 120). It was decided to try anti-inflammatories and over-the-counter medications. (Tr. 120). If this was not adequate for pain relief, Dr. Mitchell indicated Cleary might become a candidate for a fusion or a replacement. (Tr. 120).

AO72A
(Rev. 8/82)

On October 28, 2003, Cleary underwent a general physical examination by Dr. Randy Conover at the request of the Social Security Administration. (Tr. 121-127). Dr. Conover noted that Cleary reported a history of stiffness and swelling in her right ankle. (Tr. 121). He noted she could only stand about thirty minutes before needing to sit, could walk one to two miles before needing to sit, and after sitting for about thirty minutes her ankles began to get stiff. (Tr. 121).

Cleary's only medications at the time were over-the-counter Ibuprofen and birth control pills. (Tr. 121). Cleary reported suffering from depression and anxiety. (Tr. 123).

Cleary's range of motion for her extremities was within normal with the exception of her ankles. (Tr. 124). Dorsiflexion in her right ankle was recorded at 5-10 degrees and plantar flexion at 20 degrees. (Tr. 124). Dorsiflexion in her left ankle was 20 degrees and plantar flexion at 40 degrees. (Tr. 124). She was able to partially walk on her toes but unable to walk on her right heel. (Tr. 125). Right ankle x-rays revealed hardware in place in the right tibia and distal femur with decreased joint space and increased subchondral sclerosis but no osteophytes. (Tr. 126). Right knee x-rays revealed no decreased joint space, osteophytes, or increased sclerosis. (Tr. 126).

Dr. Conover listed his diagnostic impressions as: decreased vision; right knee pain; history of depression; history of anxiety; right ankle pain, decreased range of motion; and history of fracture of the right patella. (Tr. 127). He noted that Cleary could handle, finger, hear and speak. (Tr. 127). He stated she was mild to moderately limited in her ability to walk, stand, lift, carry, and see secondary to the listed diagnoses. (Tr. 127).

AO72A
(Rev. 8/82)

On November 10, 2003, a residual physical functional capacity assessment was completed by Dr. Linda Green. (Tr. 128-135). With respect to exertional limitations, it stated Cleary could occasionally lift or carry ten pounds; could frequently lift or carry less than ten pounds; could stand or walk at least two hours in an eight-hour workday; could sit about six hours in an eight-hour workday; and her ability to push and pull was unlimited other than as shown for lift and/or carry. (Tr. 129). With respect to postural limitations, it was noted Cleary could only occasionally climb, balance, stoop, kneel, crouch, or crawl. (Tr. 130). No manipulative, visual, communicative, or environmental limitations were established. (Tr. 131-132). At that time, there was no treating or examining source statement regarding Cleary's physical capacities in the file. (Tr. 134).

On April 20, 2004, Dr. James W. Gorman wrote a letter in support of Cleary's disability claim. (Tr. 139). Dr. Gorman indicated he had worked with Cleary at both Washington Regional Medical Center and Willow Creek Women's Hospital. (Tr. 139). When Dr. Gorman worked with her recently, he stated he found she "was routinely unable to complete her 8 hour shift." (Tr. 139). In fact, he stated during one shift he examined her knee and ankle due to the degree of swelling and sent her home to bedrest. (Tr. 139). Based on the above, he opined that Cleary was disabled and recommended approving her for disabled status. (Tr. 139).

At the hearing held on October 19, 2004, Cleary testified she was twenty-seven years old, had graduated high school, and completed her training as a licensed practical nurse (LPN). (Tr. 150-151). Cleary testified she had last worked at a clinic for a month or two and left the job because she has a disabled child and was having problems with her. (Tr. 151). Prior to that, she

AO72A
(Rev. 8/82)

worked at both Washington Regional Medical Center and Willow Creek Women's Hospital as an LPN. (Tr. 151-152).

Cleary testified she was injured in an automobile accident in August of 1999. (Tr. 157). She was pregnant with her first child at the time and had to have an emergency cesarean section. (Tr. 157). Because of the trauma of the accident, Cleary stated her daughter was born with cerebral palsy. (Tr. 157).

She has a one and a half inch wide scar across her abdomen from the operation which pulls against her when she tries to twist, turn, reach, or stretch. (Tr. 158). Cleary testified she was pregnant again and was going to have another cesarean section during which they were going to attempt to fix the scar. (Tr. 158).

Cleary testified she sustained a broken right ankle and left clavicle in the automobile accident. (Tr. 158). She still has some problems with her left clavicle when she lifts over her head and when she attempts to sleep on her left side it is causing pain down her arm. (Tr. 158). Since the accident, she testified she has numbness and tingling down the arm. (Tr. 158). She had noticed it a lot lately because she had to sleep on her side instead of her back. (Tr. 158-159).

She indicated she can pull her arm completely over her head but not for long—less than five minutes. (Tr. 159). She indicated she can reach outward with her hand and reach behind her but if she reaches behind her it is going to hurt. (Tr. 159).

Cleary indicated she can only take stairs one at a time. (Tr. 159). With respect to her right knee, Cleary indicated she has crackling underneath it when she bends it and it is weak when she bends down. (Tr. 160).

AO72A
(Rev. 8/82)

She can walk twenty to thirty minutes at one time. (Tr. 162). In that time, she could cover a quarter of a mile maybe a little more. (Tr. 162). She can stand in one spot for five minutes or so. (Tr. 162). If she is waiting in line while shopping, she shifts her weight off her right leg onto her left and back and forth. (Tr. 162). She can sit for thirty to forty-five minutes at a time and then she has to get up and move around for five or ten minutes before she sits back down. (Tr. 163).

She testified she listed her onset disability date as December 29, 2002, because it became increasingly more difficult for her to work the eight and twelve hour shifts without constant pain and swelling. (Tr. 154-155). She believes her joint space in her ankle just wore out after her accident. (Tr. 155).

Cleary indicated she didn't believe she could do lighter work because if she sits for a long period of time she gets sore and stiff in her knee and ankle. (Tr. 155). After sitting, when she gets back up, Cleary testified she has a severe limp. (Tr. 155). If she is on her feet for a long period of time, the pain and swelling get worse. (Tr. 155). With respect to the swelling, she stated that if she was on her feet for an hour or more her right ankle swells. (Tr. 165). Cold and dampness or humidity make the ankle stiffer and increases the pain. (Tr. 165). Driving over an hour, causes her right ankle to start bothering her. (Tr. 167).

Cleary only takes over-the-counter anti-inflammatory medications for the pain. (Tr. 161). She doesn't take anything stronger because she needs to be on top of things to deal with her daughter. (Tr. 161). In her opinion, pain medication is not an option. (Tr. 161-162).

AO72A
(Rev. 8/82)

The pain in her shoulder interferes with her sleep but she is able to get seven to eight hours of sleep a night. (Tr. 166). When she wakes up because of the pain, she changes position or takes some Tylenol or Ibuprofen. (Tr. 166).

Cleary testified most of her pain occurs in the morning when she gets out of bed. (Tr. 164). She estimated the pain lasted sixty percent of the day. (Tr. 164). She is most comfortable sitting in a recliner with her feet elevated. (Tr. 165).

Cleary stated she hadn't been back to any orthopedic doctor or anyone else about her knee and ankle since November of 2002 because the doctor recommended she have surgery at that time. (Tr. 155). She stated she preferred not to have a bone fusion since she would not be able to move her ankle at all. (Tr. 155). She also stated she was told a joint replacement probably would only last a short amount of time. (Tr. 155). With having a disabled child, Clearly stated she could not afford to have a three to six month recovery period. (Tr. 155).

Cleary can pick her daughter, who weighs thirty-five pounds, up although it is a strain. (Tr. 164 & 168). To dress her daughter, Cleary sits on the floor with her. (Tr. 169). To help her daughter bathe, Cleary sits on the side of the tub. (Tr. 164). Cleary indicated she can't lean down in front of the bath tub because it is just too painful after awhile. (Tr. 164).

Cleary stated she does some contract work at home for her daughter's speech and physical therapists. (Tr. 156). She types their physical and therapy evaluations and reports. (Tr. 156). She is able to do this on her own schedule and doesn't believe she would be able to go into public and type on a schedule. (Tr. 163). When asked what prevented her from doing her typing on a full-time basis on her computer at home, Cleary indicated she had her daughter to care for

AO72A
(Rev. 8/82)

and has to take her so many places. (Tr. 170). Cleary also stated pain and fatigue sometimes affects her ability to concentrate. (Tr. 170-171).

Cleary does all her own housework. (Tr. 171). She vacuums everyday. (Tr. 185). She goes from room to room cleaning house but rests after doing each room. (Tr. 185-186). When she does dishes or cooks, she shifts her weight back and forth while she stands. (Tr. 186). She cannot bend over and change her sheets without help and cannot scrub the tub without help. (Tr. 186). Her husband helps her with those types of things–anything that requires crouching, kneeling, or reaching. (Tr. 186-187). She also gets help from her Mother. (Tr. 171).

When asked who she considered her treating doctor, Cleary stated she usually saw her gynecologist, James Gorman. (Tr. 156). However, she hasn't seen him particularly for her ankle. (Tr. 157). She did work in the same hospital with him and had a working relationship with him as well as being his patient. (Tr. 157). When she was at work, she would see Dr. Gorman three or four times a week. (Tr. 161).

Paul Westberg, the vocational expert, was asked to assume a hypothetical person of the claimant's age, education, and the same work background. (Tr. 174). Westberg was then asked to assume the following:

> This person can lift and carry 10 pounds occasionally and 5 pounds frequently, and can push and pull within those limitations. The individual can stand and walk for a[t] least two hours of an eight hour work day and can sit for at least six hours of an eight hour work day. As far as postural limitations are concerned, the individual can occasionally squat, crouch, climb stairs. The individual cannot crawl.

(Tr. 174). Westberg testified this person could not return to any of Cleary's past relevant work. (Tr. 174).

AO72A
(Rev. 8/82)

However, Westberg concluded the claimant could perform work in sedentary unskilled positions such as a cashier or an assembler. (Tr. 175). Westberg was then asked to add to the first hypothetical that the person would need a sit/stand option. (Tr. 175). Westberg testified this limitation would eliminate the assembly jobs and reduce the cashier jobs by about fifty percent. (Tr. 176).

Next, Westberg was asked to add to the second hypothetical a manipulative limitation of an individual who was right-hand dominant and could work above shoulder level on the left side only occasionally. (Tr. 176). Westberg testified this additional limitation would not eliminate the cashier jobs. (Tr. 176).

Finally, Cleary's counsel added to the hypothetical the non-exertional limitations of sensitivity to cold and sensitivity to change in work environment temperature/humidity. (Tr. 177). Westberg indicated these additional limitations would not eliminate the cashier jobs he had identified. (Tr. 177).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have

decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work

experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**Discussion**:

Cleary first maintains the ALJ committed error when he failed to seek a letter of clarification from Dr. Gorman in accordance with the provisions of Social Security Ruling 96-5p. "[A] treating physician's opinion is given 'controlling weight' if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). However, the "treating physician's opinion do[es] not automatically control, since the record must be evaluated as a whole." *Bentley v. Shalala*, 52 F.3d 784, 786 (8th Cir. 1995)(internal quotation marks and citation omitted). "An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)(internal quotation marks and citation omitted).

In some circumstances, the ALJ is required to obtain supplemental information about a treating source's medical opinion. *See Social Security Ruling* 96-5p (1996); 20 C.F.R. § 404.1512(e). However, this obligation only arises when there are "clear gaps in the administrative record," *Rosa v. Callahan*, 168 F.3d 72, 79 (2nd Cir. 1999). Reversal for failure to re-contact a treating physician is required only when: (1) the physician's records are inconclusive or otherwise inadequate to receive controlling weight; (2) the record contains no other medical opinion evidence based on personal examination or treatment; and (3) the claimant

proves prejudice. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Prejudice can be shown "by showing additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Id.* at 458.

In this case, the record shows that Dr. Gorman is Cleary's gynocologist. She also had a working relationship with him while she was employed as an LPN. She testified that he never treated her for her knee or ankle injury or residuals from those injuries and only looked at her ankle one time. (Tr. 157).

Under the circumstances, the ALJ had no obligation to seek additional evidence from Dr. Gorman. Instead, the ALJ had adequate information to determine if Cleary was disabled under the regulations and could properly rely on the records of the examining physician, Dr. Conover, and on Dr. Mitchell. Next, she maintains the ALJ erred in failing to refer her to an orthopedic specialist because of the dearth of medical records. The ALJ has a duty to develop the record fully. *See e.g., McGhee v. Harris,* 683 F.2d 256, 260 (8th Cir. 1982). " 'It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision.' " *Boyd v. Sullivan,* 960 F.2d 733, 736 (8th Cir. 1992) (citation omitted).

In this case, however, we conclude "there was substantial evidence in the record to allow the ALJ to make an informed decision." *Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001). The consultative general physical examination was ordered and the ALJ had the records from Cleary's hospital admission following the motor vehicle accident as well as the existing medical records regarding her treatment since that time including her visit to her own orthopedic doctor.

The ALJ also had the testimony of both the plaintiff and a vocational expert. In short, "[t]he record contained substantial evidence to support the ALJ's decision." *Id.*

"Furthermore, 'reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial.' " *Id. See also Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993). Cleary has made no such showing. Therefore, the ALJ did not err in failing to send the claimant for a consultative examination.

With regard to Cleary's alleged problems with depression and anxiety, the ALJ correctly noted that Cleary did not mention any mental impairment in her application or her hearing testimony, noted that there was no evidence of any current or past treatment for this alleged impairment, and noted that she had made no complaints when seeking treatment to any physician regarding the alleged problems with depression or anxiety. (Tr. 11). Instead, the only mention of problems with depression or anxiety were contained in the history she gave during the consultative general examination and on a reconsideration disability outline. (Tr. 77 & 123). *See Gregg v. Barnhart*, 354 F.3d 710, 712-713 (8th Cir. 2003)(ALJ is not required to investigate claim not presented at time of benefits application and not offered at hearing as basis for disability). More importantly, there is no evidence of treatment for these conditions. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)(ALJ is not required to discuss all evidence and failure to cite specific evidence does not mean it was not considered).

Finally, Cleary argues the ALJ failed to properly evaluate her subjective complaints of pain and ignored significant limitations on her daily activities. In disability determinations, credibility assessments are the province of the ALJ. *Onstead v. Sullivan*, 962 F.2d 803, 805 (8th Cir. 1992). This court will not substitute its judgment for that of the trier of fact, *Brown v.*

AO72A
(Rev. 8/82)

*Chater*, 87 F.3d 963, 966 (8th Cir. 1996), nor will we disturb the decision of any ALJ who seriously considers, but for good reason explicitly discredits, a claimant's testimony of disabling pain. *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993).

In this case, we believe the ALJ adequately evaluated the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) and conclude there is substantial evidence supporting the ALJ's determination that Cleary's complaints were not fully credible. As accurately pointed out by the ALJ, Cleary sought medical assistance on only a sporadic or episodic basis and the medical treatment rendered was conservative. While there is medical evidence supporting the existence of some pain and limitation, there is little in the way of medical evidence supporting the extent of the pain and physical limitation alleged to exist by Cleary.

The ALJ also properly considered Cleary's daily activities. The ALJ had not only Cleary's hearing testimony but her supplemental interview outline in which she addressed her daily activities and limitations on the same. It was proper for the ALJ to consider Cleary's testimony that one motivation for her to stop working was to care for her disabled daughter. (Tr. 54 & 151).

The ALJ pointed out inconsistencies in the record between the assessments of impairments and her description of her inability to work or perform daily activities. Inconsistencies between Cleary's treatment records and her testimony were also considered. The "ALJ is entitled to make a factual determination that a Claimant's subjective pain complaints are not credible in light of objective medical evidence to contrary." *Ramirez v. Barnhart*, 292 F.3d

AO72A
(Rev. 8/82)

576, 581 (8th Cir. 2002); *Black v. Apfel*, 143 F.3d 383, 388 (8th Cir. 1998)(upholding denial of benefits where no objective medical evidence supported claimant's subjective pain complaints).

The ALJ also properly considered Cleary's infrequent treatment for her alleged various impairments. *See e.g., Benskin v. Bowen,* 830 F.2d 878, 884 (8th Cir. 1987). Although Cleary testified she did not use prescription medication because of a need to stay alert to care for her daughter and did not pursue further treatment because she did not have the money or the time to devote to recovery from surgery, there was no evidence she attempted to utilize medications or therapies that could have offered some type of relief or made any attempt to obtain low-cost or free care. *See e.g., Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999). Cleary sought no medical treatment for her knee or ankle after November of 2002. (Tr. 157).

We next turn to the ALJ's determination that Cleary had the RFC to engage in a full range of sedentary work. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,*

353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect [her] RFC." *Id*.

In the present case, the ALJ carefully reviewed the medical records, plaintiff's subjective complaints, the plaintiff's testimony regarding her daily activities, and the functional limitations set forth by the physicians. As noted above, the ALJ carefully explained his reasons for discounting Cleary's testimony regarding the disabling nature of her physical limitations and associated pain. The ALJ also carefully reviewed the medical records and the examining physician's assessment of Cleary's physical capabilities. The medical evidence does not support a finding of greater functional limitations than those found to exist by the ALJ. In fact, the medical findings do not support any restrictions on Cleary that would be inconsistent with this RFC.

**Conclusion**:

For the reasons stated, I recommend that the decision of the Commissioner be affirmed. **The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Dated this 23rd day of May 2006.

/s/ Beverly Stites Jones
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)